### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| NOEL YBARRA, ANTONIO GALLEGOS, and LINAL LYNN PIERCE | § § § | |
| *Plaintiffs* | § § | |
| v. | § § | Civil Action No. 7:21-cv-00135 |
| MULHOLLAND ENERGY SERVICES, LLC, | § § § § | |
| *Defendant* | § | |

### PLAINTIFFS' ORIGINAL COMPLAINT

### JURISDICTION AND VENUE

1. This is an action for unpaid overtime wages under the federal Fair Labor Standards Act ("FLSA").

2. Defendant Mulholland Energy Services, LLC ("Mulholland") provides oilfield support services such as hydro-excavation; tank cleaning; hauling; waste disposal; water transfer; rig cleaning; cleaning, drifting, and tallying of casings; and emergency response.

3. Plaintiffs worked for Mulholland in various safety, compliance, and security roles.

4. Defendant did not pay Plaintiffs overtime pay, even though they regularly worked over 40 hours per week.

5. This Court has jurisdiction over the Plaintiff's FLSA claims pursuant to the following:

    a. 28 U.S.C. §1331 (Federal Question);

    b. 28 U.S.C. § 1337 (Interstate Commerce); and

    c. 29 U.S.C. § 216(b) (FLSA);

6. This Court has personal jurisdiction over the Defendants because each Defendant has sufficient contacts with this forum to give this Court general jurisdiction over each Defendant.

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2).

8. The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202.

## THE PARTIES

9. Plaintiff Noel Ybarra is an individual residing in Ector County, Texas.

10. Plaintiff Antonio Gallegos is an individual residing in Ector County, Texas.

11. Plaintiff Linal Lynn Pierce is an individual residing in Erath County, Texas.

12. Each of the Plaintiffs has consented to the filing of this action for violations of the FLSA. (Attached hereto as Exhibit A.)

13. Defendant Mulholland Energy Services, LLC is a domestic limited liability company organized and existing under the laws of Texas and may be served with process by serving its registered agent, Malcolm Mulholland, at 10308 WCR 72, Midland, Texas 79707.

## FACTS

14. At all times relevant to this action, Mulholland's business was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

15. At all times relevant to this action, Mulholland's business has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce, by any person.

16. In performing their work, Plaintiffs handled goods imported from other countries and states, such as office supplies and equipment.

17. At all times relevant to this action, Mulholland's business has had an annual gross volume of sales made or business done in excess of $500,000, exclusive of excise taxes at the retail level which are separately stated.

18. At all times relevant to this action, the Plaintiffs were employees, as defined by the FLSA.

19. At all times relevant to this action, Mulholland employed the Plaintiffs and was their employer, as defined by the FLSA.

**Plaintiff Noel Ybarra**

20. Mr. Ybarra worked for Mulholland from approximately August 2019 to approximately April 29, 2021.

21. Mr. Ybarra's primary position was Safety Instructor.

22. Mr. Ybarra's primary duties as a Safety Instructor consisted of teaching a one-week safety orientation course for new hires, as well as administering breathalyzer tests and collecting urine samples for drug tests for the new hires as part of the orientation.

23. Mr. Ybarra did not develop any curriculum nor exercise any independent discretion over the material to be taught. Rather, he taught the curriculum and used the materials dictated by Mulholland. Mulholland directed Mr. Ybarra to use particular syllabi, training videos, and computer-based modules developed by various third parties.

24. Mr. Ybarra also performed some of the duties of a Health, Safety, and Environmental ("HSE") Field Coordinator, more commonly known as a Safety Rep.

25. Mr. Ybarra's primary duty when acting as a Safety Rep was responding to accidents involving Mulholland employees in the field, for which he was on call 24 hours a day, seven days a week and often worked outside his normal work schedule.

26. Mr. Ybarra would investigate and write an accident report using a form and following instructions Mulholland gave him. If any Mulholland employees were injured, he would drive them to a clinic or hospital.

27. Mr. Ybarra was also assigned duties maintaining and servicing various computers, cameras, and electronics equipment.

28. Mr. Ybarra routinely performed compensable work tasks, including phone calls, paperwork, and data entry at home outside of his scheduled hours.

29. Mr. Ybarra routinely worked between 45 and 55 hours per week throughout his employment with Mulholland, and sometimes more.

30. Mulholland initially paid Mr. Ybarra an annual salary of $75,000, paid on a weekly pay period. In early 2020, during the COVID-19 pandemic, Mulholland decreased Mr. Ybarra's annual salary to $63,750.

31. Mr. Ybarra's salary did not include a weekly minimum guarantee, as defined by

### Plaintiff Antonio Gallegos

32. Mr. Gallegos worked for Mulholland from approximately October 2018 to approximately April 2020.

33. From the beginning of his employment, Mr. Gallegos worked as a Health, Safety, and Environmental ("HSE") Field Coordinator, also known as a Safety Rep.

34. Mr. Gallegos' primary duties as a Safety Rep included conducting daily inspections at multiple field locations and leading safety meetings at some locations.

35. Mr. Gallegos' primary duties as a Safety Rep also included responding to accidents involving Mulholland employees in the field outside of his normal work schedule, for which he was on call 24 hours a day, seven days a week and often worked outside his normal work schedule.

36. Mr. Gallegos would investigate and write an accident report using a form and following instructions Mulholland gave him. If any Mulholland employees were injured, he would drive them to a clinic or hospital.

37. Approximately in or around January 2019 into his employment, Mr. Gallegos became a Safety Instructor.

38. Mr. Gallegos' primary duties as a Safety Instructor consisted of teaching a one-week safety orientation course for new hires, as well as administering breathalyzer tests and collecting urine samples for drug tests for the new hires as part of the orientation.

39. Mr. Gallegos did not develop any curriculum nor exercise any independent discretion over the material to be taught. Rather, he taught the curriculum and used the materials dictated by Mulholland. Mulholland directed Mr. Gallegos to use particular syllabi, training videos, and computer-based modules developed by various third parties.

40. After becoming a Safety Instructor, Mulholland still sometimes assigned Mr. Gallegos duties pertaining to Safety Reps, including investigating accidents.

41. Mr. Gallegos routinely performed compensable work tasks, including phone calls, paperwork, and data entry at home outside of his scheduled hours.

42. Mr. Gallegos worked at least about 75 to 80 hours per week from the beginning of his employment until about February 2019 when he started teaching the new hire orientation course.

Once he became a Safety Instructor and throughout the remainder of his employment, Mr. Gallegos routinely worked between about 45-55 hours per week, and sometimes more.

43. Mulholland initially paid Mr. Gallegos an annual salary of $70,000, paid on a weekly pay period. Approximately two weeks into his employment, Mulholland increased Mr. Gallegos' salary to $75,000. At some point later in his employment, Mulholland increased Mr. Gallegos' salary to $80,000.

**Plaintiff Linal Lynn Pierce**

44. Mr. Pierce worked for Mulholland from approximately July 27, 2019, to approximately December 4, 2020.

45. From the beginning of his employment, Mr. Pierce worked as a Health, Safety, and Environmental ("HSE") Field Coordinator, also known as a Safety Rep, and also as a Security Officer.

46. Mr. Pierce's primary duties as a Safety Rep included conducting daily inspections at multiple field locations and leading safety meetings at some locations.

47. Mr. Pierce's primary duties as a Safety Rep also included responding to accidents involving Mulholland employees in the field outside of his normal work schedule, which often occurred outside his normal work schedule. Mr. Pierce would investigate and write an accident report using a form and following instructions Mulholland gave him. If any Mulholland employees were injured, he would drive them to a clinic or hospital.

48. Mr. Pierce's primary duties as a Security Officer were providing security for Mulholland's facility in Midland, Texas, and Mulholland's offsite employee housing. For example, Mr. Pierce was assigned to escort employees from Mulholland's premises after they were terminated. Mr. Pierce also was called to assist with potentially confrontational incidents

such as addressing employees engaged in illegal conduct and evicting former employees from company-provided housing.

49. Mr. Pierce was on call 24 hours a day, seven days a week both to respond to incidents in his Security Officer role, as well as to investigate accidents in his Safety Rep role.

50. Mr. Pierce was also sometimes assigned to assist with the new hire safety orientation course.

51. In or around April 2020, Mulholland assigned Mr. Pierce to the role of DOT Compliance Manager, in addition to his roles as Safety Rep and Security Officer.

52. Mr. Pierce's primary duties as a DOT Compliance Manager were ensuring all company vehicles in Texas and Oklahoma maintained current inspections and registrations; coordinating with drivers and their supervisors to have them take the vehicles for inspections; monitoring the status of drivers' licenses and any citations; and entering data to track the inspections, registrations, and license status.

53. Mr. Pierce routinely performed compensable work tasks, including phone calls, paperwork, and data entry at home outside of his scheduled hours.

54. Mr. Pierce routinely worked between 80 and 100 hours per week throughout his employment with Mulholland.

55. Mulholland initially paid Mr. Pierce an annual salary of $62,000, paid on a weekly pay period. In or around April 2020, at the time Mulholland assigned him the DOT Compliance Manager role, Mulholland increased Mr. Pierce's annual salary to $65,000.

56. Mulholland deducted a portion of Mr. Pierce's salary for two days in November 2020 that he worked from home rather than at Mulholland's facility or field locations.

**All Plaintiffs**

57. None of the Plaintiffs ever directed the work of at least two or more other full-time employees or their equivalent.

58. None of the Plaintiffs ever had the authority to and none ever hired or fired employees, nor did Mulholland solicit any of the Plaintiffs' recommendations or suggestions about hiring or firing employees.

59. None of the Plaintiffs was allowed to exercise discretion or independent judgment with respect to matters of significance in Mulholland's management or general business operations. Rather, all matters of significance related to the Plaintiffs' work were decided by Mulholland's Health, Safety, Environmental and Security Director, Nic Gallegos.

60. Mulholland did not pay any of the Plaintiffs overtime pay when they worked more than 40 hours per week.

61. Mulholland did not record the hours that the Plaintiffs worked.

62. Mulholland knowingly, willfully, or with reckless disregard, failed to pay the Plaintiffs the required time-and-a-half overtime pay.

**CLAIM FOR RELIEF (FLSA Overtime)**

63. The above-described actions by Mulholland violated the Plaintiffs' overtime pay rights under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, for which the Plaintiffs are entitled to relief pursuant to 29 U.S.C. § 216(b).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court award them:

    a. Their unpaid overtime pay;

    b. Liquidated damages in an amount equal to their unpaid wages;

c. Reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b);

d. Post-Judgment interest, as provided by law; and

e. Such other and further relief as this Court deems just and proper.

Respectfully submitted,

**JOHNSON LAW FIRM**

By: */s/ Aaron Johnson*
Aaron Johnson
State Bar No. 24056961
ajohnson@fairlaborlaw.com
314 E. Highland Mall Blvd, Ste. 401
Austin, Texas 78752
(512) 277-3505
(512) 277-3254 (fax)

**ATTORNEY FOR PLAINTIFFS**